IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS E. CRAFT,           CASE NO. 2:07-cv-0163
                                                     JUDGE FROST
       Petitioner,                 MAGISTRATE JUDGE ABEL

v.

ERNIE MOORE, Warden,

       Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. This case involves petitioner's convictions after a jury trial in the Vinton County Court of Common Pleas on murder with a firearm specification. The Ohio Fourth District Court of Appeals affirmed petitioner's conviction and sentence. Petitioner did not thereafter timely appeal, and the Ohio Supreme Court denied his motion for delayed appeal. For the reasons that follow, the Magistrate Judge concludes that this action is barred by the one-year statute of limitations and **RECOMMENDS** that this action be **DISMISSED.**

### FACTS and PROCEDURAL HISTORY

The Fourth District Court of Appeals summarized the facts and procedural history of this case as follows:

> A Vinton County Grand Jury indicted Appellant on one count of murder in violation of R.C. 2903.02(A), with a firearm specification in violation of R.C. 2941.145. Appellant filed

written pleas of not guilty and not guilty by reason of insanity. The trial court ordered evaluations to determine whether Appellant was (1) competent to stand trial and (2) sane at the time of the crime.

The Shawnee Forensic Center performed the competency evaluation. Initially, the examiner filed a report finding Appellant incompetent to stand trial. Because the evaluation found Appellant incompetent, the examiner did not perform a sanity evaluation. At the competency hearing the examiner changed his finding and concluded that Appellant was competent to stand trial. The examiner testified that Appellant successfully faked incompetency during the evaluation. According to the examiner, after he reviewed: (1) 26 taped phone calls Appellant made from jail; (2) case records from Tri-County Mental Health; and (3) Appellant's IQ test results, he determined that Appellant was competent to stand trial.

Before voir dire, Appellant's counsel requested a bench conference and informed the court that Appellant wished to withdraw his plea of not guilty by reason of insanity. Defense counsel stated: "With regard to the not guilty by reason of insanity plea I've discussed it with my client and we are withdrawing that at this time. We will present no evidence on that issue." The trial court ordered the plea withdrawn.

At trial, the State presented evidence that Appellant intentionally caused Nicholas Wheeler's death by firing one shot into the victim's chest. Testimony revealed that Appellant and the victim had a contentious history. On September 13, 2003, Appellant arrived at Little John's Carryout. After making a purchase, Appellant saw his mother, Debra Cupp, in the store and went to speak with her. Then, the victim arrived at the store, made a purchase, spoke with a clerk, and left the store. Appellant followed the victim out of the store, removed his shirt, and initiated an altercation. A store clerk intervened in the fight and Appellant pulled out a gun. The altercation continued, but outside of witness' view. A shot was fired and Appellant fled the parking lot. The victim, shot in the chest, stumbled, stated "he shot me," and fell to the ground where he died. Appellant's mother, who was involved in the altercation,

remained at the scene and claimed she killed the victim. Later, Appellant called the Sheriff's office, confessed to the shooting, and turned himself in.

Sergeant Carolyn Brown testified that she received and recorded Appellant's phone call. She identified a taped recording of the call, which was played for the jury. On the tape, Appellant claims that the victim attacked his mother and admits to shooting the victim.

Kyle Seymour testified he witnessed the altercation between Appellant and the victim. Seymour, who worked at Little John's Carryout, spoke to the victim at the store. The victim was upset that Appellant was in the store. Seymour advised the victim to stay calm and leave. As the victim left the store, Appellant followed him out, removed his shirt, and initiated an altercation. Seymour went outside to intervene. He observed the victim getting into his car and Appellant chasing after the victim with a gun. The Appellant aimed the gun at Seymour and the victim, and then dropped the gun as he attempted to pull the trigger. Seymour fled to the store, where he called the police. He then heard a gun shot and ran back outside. He observed the victim lying on the ground, unresponsive. He heard Appellant's mom scream "I'm the one that shot him!"

Tyler Bowman witnessed the altercation. He testified that he saw Appellant aim a gun at the victim and then drop the gun. After the gun fell, both men continued to argue. The victim hit Appellant and Appellant's mother intervened and tried to hit the victim. Bowman witnessed the victim shove Appellant's mother. Then all three parties went to the far side of a parked van, out of his view. He heard the gun shot and then saw the victim lying on the ground. He heard Appellant's mother admit she shot the victim.

Bradley Ritterbeck also witnessed the altercation. He saw Appellant and the victim fighting and then heard a gun shot. Ritterbeck observed the victim come out from behind the van, holding his stomach, and stating that he was shot. Specifically, Ritterbeck heard the victim say, "he shot me," before falling to

the ground. He also heard Appellant's mother state that she shot the victim.

Sheriff David Hickey testified that he was dispatched to the scene, where he found the victim lying on the ground while paramedics worked on him. Hickey received a radio dispatch telling him that Appellant had called and confessed to the shooting. He went to the Craft residence, but Appellant had already left. Later, he located Appellant in a car on the Pike/Jackson County Line. He took Appellant into custody. On the day of the preliminary hearing, Appellant initiated a conversation with the sheriff, in which he again confessed to the shooting. Sheriff Hickey testified Appellant made the statement in the course of a voluntary and casual conversation initiated by Appellant. The sheriff admitted that his investigation revealed that Appellant's mother, who was terminally ill,FN1 also confessed to the shooting. He acknowledged that it was possible Appellant confessed to protect his dying mother, but ultimately concluded that Appellant was the shooter and his mother confessed to protect him.

FN1. Debra Cupp died in November 2003.

The State also proffered testimony from Nicholas Moore, Loretta Jenkins (aka Bobo), and Dorothy Emma Dean. Moore testified that he saw Appellant at a party before the shooting. Appellant threatened Moore and also stated that the victim was at the "top of his personal kill list." Jenkins, the victim's girlfriend, testified that she was in the parking lot at the time of the shooting. She observed Appellant and the victim fighting, and the Appellant's mother attacking the victim. Jenkins testified that Appellant pulled a gun when the victim tried to return to his car. Appellant's mother attempted to hit the victim in the head with a ladder, which Jenkins then took away from her. As Jenkins turned to hand the ladder to another person, she heard the gun shot. She then heard the victim state, "he shot me," before he fell to the ground. She observed Appellant get into his car, smile at her, and then flee.

Dean, a forensic pathologist with the Summit County Medical

4

> Examiners Office, performed the victim's autopsy. She testified, with a reasonable degree of medical certainty, that the victim died from a gunshot wound to the torso. According to Dean, the bullet perforated the victim's heart and stopped at his spinal cord.
>
> The jury deliberated and returned a guilty verdict. The trial court entered a judgment of conviction and sentenced Appellant to "an indefinite prison term of 15 years to life for the conviction of Murder, and a stated prison term of 3 years for the firearms specification," to be served consecutively for "a total indefinite prison term of 18 years to life."

*State v. Craft*, 2005 WL 1819529 (Ohio App. 4 Dist. July 28, 2005); *Exhibit 9 to Return of Writ*.

Represented by new counsel, petitioner filed a timely appeal. He raised the following assignments of error:

> I. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT'S FAILURE TO INSIST THAT AN EVALUATION BE PERFORMED TO DETERMINE CRAFT'S SANITY AT THE TIME OF THE SHOOTING CONSTITUTES A VIOLATION OF CRAFT'S SUBSTANTIVE FOURTEENTH AMENDMENT RIGHTS AS WELL AS ANALOGOUS RIGHTS PURSUANT TO ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.
>
> III. DEFENSE COUNSEL'S FAILURE TO INSIST UPON A SANITY EVALUATION CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> IV. CRAFT'S TRIAL COUNSEL WAS INEFFECTIVE IN NOT MOVING TO SUPPRESS CRAFT'S UNCOUNSELED STATEMENT TO SHERIFF DAVID HICKEY AT THE TIME OF THE PRELIMINARY HEARING.
>
> V. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO STATEMENTS MADE BY WHEELER AFTER HE

HAD BEEN SHOT.

*See id.* On July 28, 2005, the appellate court affirmed the trial court's judgment. *Id.* Petitioner did not timely appeal; however, on November 18, 2005, he filed a motion for delayed appeal with the Ohio Supreme Court. *Exhibit 10 to Return of Writ.* On January 25, 2006, the Ohio Supreme Court denied petitioner's motion. *State v. Craft*, 108 Ohio St.3d 1410 (Ohio 2006); *Exhibit 11 to Return of Writ.*

On April 2, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The jury's verdict is against the manifest weight of the evidence.
>
> 2. The trial court's failure to insist that an evaluation be performed to determine Craft's sanity at the time of the shooting constitutes a violation of Craft's substantive Fourteenth Amendment rights as well as analogous rights pursuant to Article 1, Section 16 of the Ohio Constitution.
>
> 3. Defense counsel's failure to insist upon a sanity evaluation constituted ineffective assistance of counsel.
>
> 4. Craft's trial counsel was ineffective in not moving to suppress Craft's uncounseled statement to Sheriff David Hickey at the time of the preliminary hearing.
>
> 5. Trial counsel was ineffective for failing to object to statements made by Wheeler after he had been shot.

It is the position of the respondent that this action must be dismissed as barred by the one-year statute of limitations under 28 U.S.C. §2244(d). Alternatively, respondent

contends that petitioner's claims are procedurally defaulted, inappropriate for federal habeas corpus review, or without merit.

## I.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, provides for a one-year statute of limitations on the filing of habeas corpus actions.  28 U.S.C. §2244(d)(1) provides:

> (d)(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.  The limitation period shall run from the latest of -
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1),(2).

Petitioner's conviction became final on September 11, 2005, forty-five days after the Fourth District Court of Appeals' July 28, 2005, dismissal of his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *DiCenzi v. Rose,* 452 F.3d 465, 468-69 (6th Cir. 2006); *Marcum v. Lazaroff,* 301 F.3d 480, 481 (6th Cir. 2002); *Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir.2001); Ohio Supreme Court Rule of Practice II, Section 2(A)(1)(a). The statute of limitations ran for sixty-eight days, until November 18, 2005, when petitioner filed his motion for delayed appeal. The motion for delayed appeal tolled the running of the statute of limitations until January 26, 2006, when the Ohio Supreme Court denied petitioner's motion for delayed appeal. *Lawrence v. Florida,* 127 S.Ct. 1079, 1081 (2007).

> [T]he Sixth Circuit has ... held that delayed appeals in state court are collateral and therefore not part of a petitioner's direct appeal for purposes of § 2244(d). *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir.2006); *Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir.2001).... Other district courts have also held that delayed appeals are not part of the direct appeal process under 28 U.S.C. § 2244(d).... "Motions for delayed appeal in Ohio's courts may toll the statute of limitations under 28 U.S.C. § 2244(d)(2) but are not part of the direct appeals process for purposes of 28 U.S.C. § 2244(d)." *Keister v. Eberlin*, No. 5:07 CV 0808, 2007 WL 4510218, at *2 (N.D.Ohio Nov. 26, 2007); see *also Hammond v. Gansheimer*, No. 5:06 CV 2339, 2008 WL 163611, at *1 (N.D.Ohio Jan. 17, 2008).

*Sanders v. Bobby*, 2008 WL 276415 (N.D. Ohio, Western Division January 31, 2008). The statute of limitations expired 297 days later, on November 19, 2006. Petitioner waited approximately three more months to execute his petition, on February 16, 2007. The petition was not filed until April 2, 2007. Further, petitioner has failed to allege any

8

extraordinary circumstances that justify equitable tolling of the statute of limitations. *Jurado v. Burt*, 337 F.3d 638, 642-43 (6th Cir. 2003), citing *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as time-barred.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel<br>United States Magistrate Judge